IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL B. SIGAL,                               )        Civil Action No. 2:13-cv-00169
                                                )
                                                )        Magistrate Judge Cynthia Reed Eddy
                                                )
            Plaintiff,                          )
                                                )
    v.                                          )
                                                )
                                                )
THE GENERAL AMERICAN LIFE                       )
INSURANCE COMPARY, THE                          )
PAUL REVERE LIFE INSURANCE                      )
COMPANY, AND UNUM GROUP                         )
                                                )
            Defendants.                         )

## OPINION

On January 2, 2013, Plaintiff, Michael B. Sigal ("Sigal") filed this action in the Court of

Common Pleas of Allegheny County. The matter was timely removed to this Court on diversity

grounds. In a Seven Count Amended Complaint [ECF No. 10], Sigal alleges wrongful denial of

claims made under disability insurance policies issued by Paul Revere Life Insurance Company

("Paul Revere"), Paul Revere's wholly owned subsidiary, Unum Group, ("UNUM"), and General

American Life Insurance Company ("General American") (collectively "Defendants" or "the

insurers"). In Counts I and II Sigal alleges breach of contract against Paul Revere and General

American, respectively, in connection with benefits determinations made in 2005 and 2010. In

Count III, he alleges that in failing to approve benefits, both insurers breached the common law

duty of good faith and fair dealing. Count IV sets out a claim for breach of a third-party

beneficiary contract against UNUM and Paul Revere. In Count V, Sigal alleges that all

Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Act

("UTPCPT"), 73 Pa. Cons. Stat. Ann. § 201 et seq. Count VI contains a bad faith claim against all Defendants, pursuant to 42 Pa. Cons. Stat. Ann. § 8371 (1982 & 1995 Supp.), and, in Count VII, Sigal alleges that the insurers engaged in civil conspiracy to violate the UTPCPA, 73 P.A. Cons. Stat. Ann § 201 et. seq., by entering into an agreement to "deny his claim, irrespective of it merits." [Id.].

In a pending Motion to Dismiss [ECF No. 12], made pursuant to 12(b)(6), Defendants ask that the Amended Complaint be dismissed in its entirety with respect to the 2005 denial of benefits, and that Counts III, V, VI, and VII be dismissed as to all claims based on the 2010 claim denial. The Court will grant the Motion.[1]

## Facts Alleged in the Amended Complaint

In his Amended Complaint, Sigal, a "medical ophthalmologist" in his late fifties, alleges that in 1989, he purchased two disability insurance policies from Paul Revere, and, in 1990, secured a third policy from General American. At the time of these purchases, Sigal practiced as a "surgical ophthalmologist." [ECF No. 10 ¶¶ 3-17].

In 2001, Plaintiff's cardiologist, Dr. Edmundowicz ("Edmundowicz"), diagnosed Sigal with asymptomatic coronary artery disease [Id. ¶ 19]. Sigal was advised to be compliant with medication, eat a proper diet, exercise, get adequate sleep, and avoid stress. [Id. ¶ 22]. Sigal identified intraocular surgery as his most significant job-related stress, and was advised that removing this stressor would slow the progress of his condition. [Id. ¶¶ 23, 24]. Plaintiff followed these recommendations, including eliminating eye surgery from his practice as of July 1, 2004. [Id. ¶ 5]. Three months later, he filed claims under each of the three disability policies, stating that

---

[1]  In accordance with 28 U.S.C. § 636 (c)(1), the parties have consented to have this matter adjudicated by a United States Magistrate Judge. [ECF Nos. 17, 18].

ceasing eye surgery in order to reduce the risk of progression of his coronary artery disease caused a significant drop in his income. [Id. ¶¶ 27-28].

On June 27, 2005, Sigal received a five-page letter on General American letterhead from Disability Benefits Specialist, Donna Terrasi, for the General American Claims Unit and/or Paul Revere "to update [Sigal] on the status of [his three claims] at [that] time." [ECF No. 10-6 at p.1]. She noted that under the Paul Revere Policies, the term "Total Disability" was defined as follows:

> "*Total Disability* means that because of Injury or Sickness:
>
> > 1. You are unable to perform the important duties of Your Regular Occupation; and
> > 2. You are under the care of a Physician."

[Id.]

Under the General American Policy, the "***Own Occupation Rider for the Full Benefit Period***" define[d] Total Disability as follows:

> "***Total Disability and Totally Disabled*** mean that, as a result of Sickness or Injury, or a combination of both, you are unable to perform all the material substantial duties of your regular occupation.

[Id.]

The letter then detailed the medical analysis of Sigal's claims. Records generated by Edmundowicz had been reviewed by the insurers' Clinical Consultant. [Id. at p. 2]. In the Consultant's medical opinion "the Restriction & Limitation of an inability to perform surgery was not medically supported." [Id.]. Sigal's file was also reviewed by a company physician who was "board certified in internal medicine and cardiovascular disease." [ECF No. 10 ¶ 30]. That physician wrote:

> Dr. Sigal has coronary atherosclerosis as evidence [sic] by an abnormal EBCT. However, there is [sic] no data to support a clinical diagnosis of coronary heart disease. In particular, Dr. Sigal is totally asymptomatic with respect to

3

his cardiovascular system and he maintains a high level of aerobic exercise. His nuclear stress test documents no evidence of myocardial ischemia at a workload of 17 MET's, which is a very high work load. As a result, his functional capacity is well above normal for someone his age . . . Dr. Sigal is not impaired as a result of his coronary atherosclerosis. Furthermore, there is no support in the medical records for Dr. Edmundowicz's restriction and limitations of not performing surgery and I do not agree with these restrictions and limitations. In addition, Dr. Sigal is not impaired as a result of his hypertension which is under excellent control.

[ECF No. 10-6 at p. 4].

In December 2004, a telephone conference was held between Sigal's cardiologist and the reviewing physician. A summary of the conversation is set out in a letter from the reviewing physician to Edmundowicz dated December 17, 2004. The Companies sent two copies to Edmundowicz, asking him to sign one copy and return it to the Companies if he concurred that the summary was accurate and complete. Edmundowicz did so without making changes. Thus, he agreed that Sigal did not evidence significant obstructive coronary artery disease and was not functionally impaired or limited as a result of coronary atherosclerosis. [Id.].

In February 2005, Paul Revere and General American informed Sigal that they had exercised their contractual right to have his file reviewed by an Independent Medical Examiner ("IME") who, in turn, recommended that the file be reviewed by a senior university-based cardiologist with an interest in the relationship between cardiac conditions and stress. Sigal was notified that it would take up to four months for the IME to review the records. Given the delay, payments under the policies were made under a Reservation of Rights. [Id. at p. 3].

While the insurers were searching for an appropriate IME, they learned that Disability Management Services had ordered an independent medical evaluation of a claim made by Sigal under an unrelated policy with Massachusetts Casualty Insurance Co. Sigal's file in that matter

had been reviewed by Dr. Michael Gaziano, Chief Associate Professor of Medicine at Brigham and Woman's Hospital in Boston, Massachusetts. [Id. at p. 4]. Paul Revere and General American obtained a copy of this report in which Dr. Gaziano wrote:

> I do not feel that Dr. Sigal's medical records support the need for any significant limitations or restrictions of his usual activities. He had no evidence of significant flow limitations or restrictions of his usual activities. He had no evidence of flow limiting stenosis in his coronary arteries. His echocardiogram indicates no cardiac impairment. He has excellent exercise capacity as demonstrated on his last tress [sic] test in September. He achieved 17 MET's which is a very high physical work load that exceeds the demands of his every day duties as a physician. Based on these objective results, I do not feel that there is a basis for any limitations or restrictions from his usual work day activities . . . In my opinion there was no cardiac basis for any interruption to his usual activities. If he ha[s] stopped his regular activities, he can resume them . . . When referring to a major cardiac event the objective data provided in the medical records indicate that Dr. Sigal is at a very low risk . . . Given the results of his stress test and echo, he would be at a low enough risk to fly an airplane or drive a train.

[Id.].

The Paul Revere/General American Disability Benefits Specialist then notified Sigal: "[W]e have concluded that there is no medical evidence that would preclude you from performing surgery. Therefore . . . we find that you do not satisfy the definition of Total Disability as stated in your policy and no further benefits would be due." [Id. at p. 5]. Sigal was invited to submit additional information supporting his request for benefits on a cardiac basis. He was also informed that if he "disagree[d] with [the] determination and intend[ed] to appeal this claim decision" he was "required to submit a written appeal . . . within 180 days of this letter . . . If we do not receive your written appeal within 180 days of this letter, our claim determination will be final." [Id.]. According to Sigal, this "letter did not address his actual claim, which was that he was forced to discontinue his surgical practice *in order to reduce stress,* which would, in turn,

slow the progression of his coronary artery disease *so that he would not suffer actual physical harm in the future.*" [ECF No. 10 ¶ 34] (emphasis in original). It is undisputed that Sigal failed to bring this alleged error to the attention of the Claims Representative and did not file a timely appeal from the claim determination described in the June 27, 2005 letter.

Sigal alleges that in early 2010, he experienced arm pain while exercising, and, after assessment, required bypass surgery. [Id. ¶¶ 46-47]. Sigal states that "[i]n early June 2010, [he] accepted Ms. Terrasi's invitation - [made in the 2005 decision letter] to submit additional information – evidence of the progression of his heart disease to the need for bypass surgery - to support his request for disability benefits . . . for further review." [Id. at ¶ 48]. He sought disability benefits for the period beginning July 1, 2004, and for the period after April 5, 2010. [Id. at ¶¶ 48-50]. On November 18, 2010, Sigal received a letter on UNUM letterhead from Cara J. Bernard, Lead Disability Benefits Specialist, stating that Paul Revere "would not be able to approve" payment of benefits for the period from July 1, 2004 to April 4, 2010. [ECF No. 10-7 at p. 1]. "[T]he information contained in your claim file does not support your inability to perform the important duties of your occupation as an ophthalmologist from the period of July 1, 2004 to April 4, 2010." [Id. at p. 4]. The letter then summarized the discussion between Edmundowicz and the insurance physician:

> [T]hey were unaware of any randomized trials that established that cessation of work of work perceived as stressful would alter the course of coronary disease [or] of any professional society guidelines promulgated in the above time period that would mandate that an asymptomatic surgeon with a high coronary calcium score but a normal maximal radionuclide exercise sturdy should remove himself from the practice of surgery. Dr. Edmundowicz indicated that he had discussed with [Sigal] the then existing data regarding the relationship of stress to the progression or coronary disease and thought it was inconclusive[.] [Y]ou ultimately made the decision to stop doing eye surgery as you found it to be very stressful.

6

[Id. at p. 3]. The insurers made clear that though they had researched the 2004 matter, this review was conducted under reservation of all rights and defenses:

> [W]e believe the statute of limitations has expired and we are without further obligation in this matter. Our willingness to perform some research into the issues you have raised should not be construed as the opening or a claim or the taking of any action that might 'renew' any such statute of limitations. These limits come in two forms; first, there are applicable statutes of limitations enacted by the Legislature; second, there is also a contractual provision in your policy that independently precludes an insured from filing suit more than three years after proof of loss is required to be furnished to the insurance company.

[Id.].

With respect to the 2010 claim, Paul Revere stated: "Going forward from 4/5/10, . . . it would be reasonable that you would be restricted from high stress procedures such as . . . ophthalmologic surgery." [Id. at p. 4]. That said, Paul Revere concluded that aside from the period of disability immediately following the coronary bypass, Sigal's "production [was] similar to 2009 and the months of February 2010 and March 2010. (We were not able to comment on January and August 2010 as the reports were incomplete.)" [Id.]. The evaluative portion of the letter concluded as follows:

> Based on our review, we find . . . you are able to perform the material and substantial duties of your own occupation as performed prior to your disability of April 5, 2010. Also, based on our review, the information in your claim file indicates that you were able to perform the duties of your own occupation from July 2004 to April 4, 2010 and the resulting loss of earnings that you might have had . . . was not due to a sickness as defined in your policies. Therefore, you do not meet the definition of Residual Disability[2] or Total Disability under your

---

[2] Under the terms of the Paul Revere policies, **"Residual Disability"** prior to the Commencement Date, means that due to Injury or Sickness:

    a. (1) You are unable to perform one or more of the important duties of Your Occupation; or

      (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them, and

> policies. Therefore, your claim has been closed effective November 18,
> 2010.

[Id. at p. 5].[3] As before, the insurers offered to reconsider the April 2010 claim based on

submission of additional information within a 180 day period. If Sigal did not have additional

information, disagreed with the determination, or sought to appeal the claim decision, he was

obligated to file the appeal within 180 days of the date of the letter. "If we do not receive your

written appeal within 180 days of the date of this letter, our claim determination will be final."

[Id. at pp. 5-6].

## Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept

as true all well-pleaded factual allegations and construe them in the light most favorable to the

non-moving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). In Phillips,

the United States Court of Appeals for the Third Circuit reiterated the Rule 12(b)(6) pleading

---

> b. Your Loss of Earnings is equal to at least 20% of Your Prior Earnings while You are
> engaged in Your Occupation or another occupation; and
>
> c. You are under the regular and personal care of a Physician.
>
> As of the Commencement Date, Residual Disability means that due to the continuation of
> that Injury or Sickness:
>
> a. Your Loss of earnings is equal to at least 20% of Your Prior Earnings while you are
> engaged in Your Occupation or another occupation; and
>
> b. You are under the regular and personal care of a Physician.
>
> Residual Disability must follow right after a period of Total Disability that lasts at least as
> long as the Qualification Period, if any.

[ECF No.10-1 at p. 11]. The Residual Disability Rider to the General American Policy is

substantially similar. [ECF No. 10-3 at p. 14].

---

[3]    Although the record does not contain evidence relating to General American's denial of the
2010 claims, the parties' arguments reflect that denial took place on the same dates as the Paul
Revere denials.

requirements explained by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 and Ashcroft v. Iqbal, 556 U.S. 662 (2009). See Phillips, 515 F.3d at 233–34.

Motions to dismiss are evaluated pursuant to a three-pronged approach. First, the Court must identify the essential elements of the plaintiff's cause of action. Second, the Court evaluates whether the complaint sets forth factual allegations as opposed to conclusory statements; the former it accepts as true, and the latter it disregards. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Third, if the complaint sets forth factual allegations, the Court must determine whether they support a claim to relief that is plausible on its face. See Iqbal, 566 U.S. at 664. A claim is plausible when the plaintiff pleads facts that allow the Court reasonably to infer that the defendant is liable for the conduct alleged. Gellman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). This standard does not impose a probability requirement at the pleading stage, but instead requires that the facts alleged be sufficient to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims made. See Phillips, 515 F.3d at 234.

"A statute of limitations defense may be asserted in a motion to dismiss under Rule 12(b)(6) 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Frasier-Kane v. City of Philadelphia, No. 12-1757, 2013 WL 1277021 at *3 n.1 (3d Cir. March 29, 2013) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)). "When evaluating a Rule 12(b)(6) motion to dismiss on statute of limitations grounds, a court may consider matters of public record, or orders, exhibits attached to the complaint and undisputedly authentic documents if the plaintiff's claims are based on those documents." Eastern Steel Constructors, Inc. v. Nichols, No. Civ. A. 03-6680, 2004 WL 1878237 at *4 (E.D. Pa. Aug. 23,

2004) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## Discussion

With the Rule 12(b)(6) standard in mind, the Court turns to the Defendants' arguments.

### Sigal's Count IV Bad Faith Claim Based on the 2005 Denial of Benefits Is Untimely

In 1990, the Pennsylvania legislature enacted the bad faith insurance statute, 42 Pa. Con. Stat. Ann. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

Sigal's Section 8371 allegations based on the insurers' denial of his 2004 claims are time barred. The law is clear that the applicable statute of limitations is two years. In Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 224 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit noted that the statute itself did not specify a limitations period, and the Pennsylvania Supreme Court had yet to rule on the issue. In predicting how that Court would rule, the Court of Appeals looked to its prior decisions and to existing state case law;

> In Haugh v. Allstate Ins. Co., 322 F.3d 227 (3d Cir. 2003), this court predicted the Pennsylvania Supreme Court would apply the two-year tort statute of limitations in actions under Section 8371 . . . because a bad faith claim sounds in tort . . . A majority of lower state courts have also ruled that a two year limitations period applies. See Ash v. Cont'l Ins. Co., 861 A.2d 979, 982 (Pa. Super. 2004).

Id. Again relying on state law, the Court of Appeals predicted that the Pennsylvania Supreme Court would find that a claim for bad faith under 42 Pa Cons. Stat. Ann § 8371 accrues at the point where the insurer first provides definite notice of its decision as to the benefits requested. Id. (collecting cases). The Pennsylvania Supreme Court confirmed the prediction when it wrote in Ash. v. Cont. Ins. Co., 932 A.2d 877 (2007): "[W]e conclude the Superior Court properly determined an action under § 8371 is a statutorily-created tort action and we therefore hold such an action is subject to the two year statute of limitations under 42 Pa. C.S. § 5524." Id. at 885. See also CRS Auto Parts v. Nat'l Grange Mut. Ins. Co., 645 F. Supp.2d 354, 365 (E.D. Pa. 2009) (collecting cases).

Plaintiff contends that because no form of the verb "to deny" appears in the 2005 letter, it cannot be characterized as a clear and unambiguous denial of benefits and did not, therefore, trigger the running of the statute of limitations under Section 8371. [ECF No. 15 at p. 4]. According to Sigal, "Defendants have taken great pains to craft correspondence to policyholders that deliberately leads the policyholders to think that the 'decision' being communicated is 'interim' or otherwise 'not final' – so that they will not realize that the limitations clock has started to tick . . ." [Id. at p. 6]. Sigal relies on a sentence in the July 2005 letter: "We are writing to update you on the status of your claim at this time." [Id. at p. 9]. According to Sigal, the word "update" and the phrase "at this time," suggest an interim conclusion leading him to believe that there could be a different "update" communicating a different decision. [Id.]. Sigal also cites other language from the letter: "There does not *appear* to be a cardiac condition . . ." [id.], and "we find that you do not satisfy the definition of Total Disability as stated in your policies and no further benefits *would* be due." [Id. at p. 10] (emphasis supplied). The equivocal character of this letter is, according to Sigal, "bolstered" by Defendants' invitation to submit additional

11

information to support the benefits request. Finally, Sigal contends that since he was entitled to appeal the companies' benefits decisions, "It is specious for [them] to argue that any benefits determination in advance of such an appeal could possibly be a final denial of benefits." [Id. at p. 12]. Because, he says, the July 2005 was not a clear denial, "[t]his is not a case where Plaintiff's alleged noncompliance with the statute of limitations is obvious from the face of the Amended Complaint. Rather, the clarity (or lack thereof) of the 2005 letter as a final denial of Plaintiff's claim is a matter that must be left to the jury." [Id.]. The Court disagrees.

Sigal's first Section 8371 claim accrued on June 27, 2005, the date of the initial benefits determination. Although it is true that the letter does not specifically use the word "denial," the Court finds that no reasonable reader could construe the letter as anything other than a denial. Following a review of the medical evidence offered in support of Sigal's claim and its analysis by the insurers, the Disability Benefits Specialist wrote: "[S]ince there does not appear to be a cardiac condition causing you to discontinue all occupational duties of an Ophthalmologist, *we find that you do not satisfy the definition of Total Disability* as stated in your policies and no further benefits would be due." [ECF No. 10-6 at p. 5] (emphasis added). The letter further states: "[I]f you disagree with out [sic] *determination* and intend to appeal this *claim decision*, you must submit a written appeal." [Id.] (emphasis added). "If we do not receive your written appeal within 180 days of this letter, our *claim determination* will be final." [Id.] (emphasis added). There was no appeal.

According to Sigal, the fact that Defendants, in the 2005 notification letter, granted him the right to appeal and stated that the decision would be final if no appeal were filed, the letter cannot be viewed as a final decision triggering the running of the statute of limitations. This argument, even if it were consistent with cases decided by Pennsylvania courts and the United

States Court of Appeals for the Third Circuit, is unavailing. Assuming, arguendo, that the decision on Sigal's 2004 claim did not become final until 180 days after the June 27, 2005 letter, i.e., on December 24, 2005, the fact remains that he did not file the pending litigation until more than seven years afterward.

Sigal carries this flawed argument further, contending that because the language in the 2010 letter was ambiguous, and, because he filed a timely appeal from that decision,[4] the 2004 claims were an integral part of the 2010 requests for benefits; in making the 2010 requests, he was simply submitting additional information with respect to the 2004 claim, as the June 2005 letter invited him to do. Sigal's argument lacks merit. The 2005 letter, at a minimum, made it crystal clear that if Sigal did not file an appeal within 180 days, the claim determination was final. He did not appeal, nor does he contend that he communicated in any way with the insurers prior to filing the 2010 claim. He asks the Court to find that his right to submit additional information with respect to the 2004 claim ran forever, obligating the insurers to reconsider this claim no matter

---

[4] Plaintiff states that he "does not claim that his exercising his right to an internal appeal, in and of itself, tolled the statute. Rather, he argues, as he did with respect to the 2005 letter, "that the communication of the availability of such an appeal in the 2010 letter is one among many indicia that this letter was not an unequivocal denial . . . Accordingly, if the 2010 Letter is considered in its entirety, it cannot, as a matter of law, be deemed an unambiguous first denial of benefits" and did not trigger the running of the statute of limitations. [ECF No. 15 at pp. 15-16].

Defendants also urge this Court to take into account Sigal's original Complaint, and his repeated references therein to the letters in question as claim denials. This the Court cannot and does not do. See W. Run Student Hous. Assoc. LLC v. Huntington Nat'l Bank, 712 F.3d 165, 173 (3d Cir. 2013). There, the United States Court of Appeals for the Third Circuit stated:

> A superseded pleading may be offered as evidence rebutting a subsequent contrary assertion. For example, at the summary judgment stage, a district court may consider a statement or allegation in a superseded complaint as rebuttable evidence when determining whether summary judgment is proper. However, at the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint.

how many years had passed. This is unreasonable, and undermines the purpose underlying statutes of limitations.

In governing case law, courts have held uniformly that the limitations period for an action based on bad faith denial of insurance benefits begins to run when the insurer *first* notifies the insured of its claim determination – not when that determination is final. Sikirica, 416 F.3d at 225. See also Cozzone v. AXA Equitable Life Ins. Soc. of the U.S., 858 F. Supp. 2d 452, 460 (M. D. Pa. 2012) (quoting CRS Auto Parts, 858 F. Supp.2d at 460 for the proposition that "an insurance company's willingness to reconsider its denial does not toll the statute of limitations, as the limitations period runs from the time when Plaintiff's claim was *first* denied.") (emphasis in original); McCullough v. Northwestern Mut. Life Ins. Co., No. 2:05-cv-0105, 2007 WL 4440954 at \*4 (E.D. Pa. October 24, 2007) (same – analyzing relevant case law and rejecting argument that statute of limitations applicable to section 8371 was tolled pending conclusion of appeals process); Sigal does not cite contrary authority.[5] By the time that Sigal filed his claim in 2004, there was a significant body of state and federal case law, including appellate decisions, applying the initial denial rule and predicting that the Pennsylvania Supreme Court would do the same. Sigal's argument that the law was unclear is disingenuous.

Remaining Claims and Damage Requests Based on the 2005 Denial of Benefits are Time Barred

Defendants contend that all causes of action stemming from the the 2005 denial of Sigal's initial claims must be dismissed on limitations grounds. They summarize the applicable limitations periods as follows:

---

[5] Instead, he argues that the holding in McCullough applies only where the availability of an appeal mechanism is not mandated. The Court has not found and Sigal does not cite authority for this proposition. The Court, therefore, finds no reason to deviate from the now well established accrual principles applicable to statutory bad faith claims in Pennsylvania.

14

**Breach of Contract** (Counts I, II and IV) – four year statute of limitations. See 42 Pa. Cons. Stat. Ann. § 5525.

**Breach of Duty of Good Faith** (Count III) – four year statute of limitations. See Cozzone, 858 F. Supp. at 456. [6]

**Unfair Trade Practices and Consumer Protection Law** ("UTPCPL") (Counts V and VII) – six year statute of limitations. See Keller v. Volkswagen of America, Inc., 733 A.2d 642, 646 n.9 (Pa. Super. 1999).

**Bad Faith under 42 Pa. Con. Stat. Ann. § 8371** (Count VI) – two year statute of limitations. See Ash v. Continental Ins. Co., 932 A.2d 877 (Pa. 2007).

**Civil Conspiracy to Violate UTPCPL** (Count VI) – six year statute of limitations. See King Coal Co. v. Felton Min. Co., Inc., 690 A.2d 284, 287 n.1 (Pa. Super. 2007).

[ECF No. 13 at p. 17]. The Court agrees that each of the causes of action stemming from the

filing of Sigal's 2004 claims and the 2005 decisions with respect to those claims is time-barred.

The Timeliness of Sigal's Claims Based on Denial of the 2010 Claim

On April 5, 2010, Sigal was hospitalized as a result of exertional chest pain and, on April

7, 2010, he underwent coronary bypass surgery. [ECF No. 10-7 at p. 2]. Pursuant to a claim made

by Sigal, Paul Revere extended limited benefits as described in a letter dated November 18, 2010:

> Your claim has been paid under Reservation of Rights since August 19, 2010 for the period beginning April 5, 2010, under your two Paul Revere claims. As indicated in our letter dated September 22, 2010 while you continue[d] to gather the information we previously requested in our letter dated August 19, 2010, we had released additional benefit payments from August 4,

---

[6]  In addition to being time-barred, the Defendants observe correctly that Count III fails to state a cause of action. "[U]nder Pennsylvania law, there is no separate cause of action for breach of the duty of good faith and fair dealing[;] such a claim is subsumed within a breach of contract claim." Cummings v. Allstate Ins. Co., 832 F. Supp.2d 469, 472 (E.D. Pa. 2011) (collecting cases). Whereas a plaintiff may maintain an action alleging breach of contract and statutory bad faith, see Haugh, 322 F.3d at 236-37, the same is not true of a breach of contract action and an action for breach of the duty of good faith.. See Cozzone, 858 F. Supp. 2d at 457 (M.D. Pa. 2012)(citing federal cases interpreting Pennsylvania law). Count III of the Amended Complaint must be dismissed.

> 2010 to November 4, 2010 at 50% of your monthly benefit. We
> will not be requesting repayment of benefits paid for this period.

[Id.]. The letter also communicated that the insurer had been willing to reexamine the 2004 claims

"specifically reserv[ing] all rights and defenses . . . As we remind you of your decision from June

5, 2005, our actions should not be construed as a waiver of our rights as we believe that the statute

of limitations has expired and we are without further obligation in this matter." [Id. at p. 3]. The

Company then stated:

> Our willingness to perform some research into the issues you have
> raised should not be construed as the opening of a claim or the
> taking of any action that might 'renew' any such statute of
> limitations. These limits come in two forms; first, there are
> applicable statues of limitations enacted by the Legislature;
> second, there is also a contractual provision in your policy that
> independently precludes an insured from filing suit more than three
> years after proof of loss is required to be furnished to the insurance
> company.

[Id.]. Sigal was then notified that Paul Revere had determined that he "was able to perform the

material and substantial duties of [his] occupation as performed prior to [his] disability of April 5,

2010." [Id.]. The Company also wrote: "Based on your review, the information in your claim file

indicates that you were able to perform the duties of your own occupation from July 2004 to April

4, 2010 and any resulting loss of earning . . . was not due to a sickness as defined in your

policies." [Id.]. The insurer concluded as to both claims that Sigal "did not meet the definition of

Total or Residual Disability as under [his] policies." [Id. at p. 4] "Therefore, [his claim was]

closed effective November 19, 2010." [Id.]

Based on the same arguments raised in reference to the the 2005 letter, Sigal contends that

the November 2010 letter was ambiguous, and did not constitute a denial of benefits triggering

the relevant statutes of limitations. As it did with respect to the 2005 letter, the Court rejects this

argument, finding that any reasonable reader of the November 2010 letter would have understood it to be a denial of benefits.

Defendants do not contest that the breach of contract claims (Counts I and II) based on the 2010 denial were timely. The same is true with respect to to Sigal's claim that he is entitled to damages as the "third party beneficiary of regulatory settlement agreements made [by Paul Revere and] UNUM [with] a number of states and the United States Department of Labor. (Count IV).[7]

Sigal does not specifically address Defendants' argument that claims made under the UTPCPL (Counts V and VIII) are time barred as to the 2010 claim in that they relate only to the insurers' denial of the 2004 claim: "When [Sigal] . . . stopped conducting surgery . . . Defendants improperly refused to pay benefits under the policies." [ECF No. 10 ¶ 116]. Given the Court's finding that all claims based on the 2005 denial are time barred and were not revived by the Companies' 2010 reconsideration of the 2004 claim, the time limit for pursuing a cause of action under the UTPCPL for events occurring in 2004 has expired.

Defendants also contend that Sigal's cause of action for statutory bad faith is time-barred because the relevant period of limitations ran two years after the November 2010 denial of benefits. Plaintiff replies that provisions in the three policies trump application of the two year period of limitations, extending it instead to three years. In support of this argument, Plaintiff points first to the provision entitled "Legal Action" set out in both Paul Revere policies at Section 10.4. [ECF No. 10-1 at p. 21; ECF No. 10-2 at p. 19]. This provision reads: "You cannot bring legal action within 60 days from the date written proof of loss is given. You cannot bring it after 3

---

[7]   Under these RSAs, the Companies "agreed to heightened claims assessment requirements and to re-evaluate certain claims that had previously been denied." Korn v. Paul Revere Life Ins. Co., No. 09-1081, 2010 WL 2587947 at *6 (6th Cir. June 25, 2010). "The RSA, the contract on which [Count IV] is based, has been publicly available since its implementation in January of 2005." Id.

years from the date written proof of loss is required." A nearly identical provision appears in the

General American Policy at Section 5.03 [ECF No. 10-3 at p. 12]: "Legal action may not be

started against us to recover on this Policy until 60 days after you have filed Proof of Loss nor

more than 3 years after filing Proof of Loss is required by this Policy."[8] The Proof of Loss

provision in the first Paul Revere Policy appears in Section 9.5 and reads in relevant part:

"Written proof of loss must be sent to Us within 90 days after the end of a period for which You

are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But,

unless You are legally incapacitated, written proof must be given within one year." [ECF No. 10-

1 at p. 20]. Identical language appears in the second Paul Revere policy at Section 9.4. [ECF No.

10-2 at p. 18]. The analogous provision in the General American policy reads:

> Completion and return of the claim form, or, if needed, [a letter
> describing the cause and the extent of the loss in detail] will serve

---

[8] Pennsylvania law requires that the following language be made a part of all insurance contracts:

Proofs of Loss: Written proof of loss must be furnished to the insurer at its
said office in case of claim for loss for which the policy provides any
periodic payment contingent upon continuing loss within ninety days after
the termination of the period for which the insurer is liable and in case of
claim for any other loss within ninety days after the date of such loss.
Failure to furnish such proof within the time required shall not invalidate
or reduce any claim if it was not reasonably possible to give proof within
such time, provided such proof is furnished as soon as reasonably possible
and in no event, except in the absence of legal capacity, later than one year
from the time proof is otherwise required. 40 Pa. Cons. Stat. Ann. §
753(A)(7).

Legal Actions: No action at law or in equity shall be brought to recover on
this policy prior to the expiration of sixty days after written proof of loss
has been furnished in accordance with the requirements of this policy. No
action shall be brought after the expiration of three years after the time
written proof of loss is required to be furnished. 40 Pa. Cons. Stat. Ann. §
753(A)(11).

> as proper filing of Proof of Loss. This filing must be received in our home office no later than 90 days after the end of a period for which we are liable. For any other loss, we must be given written Proof of Loss within 90 days after such loss. Benefits will not be reduced due to a delay in filing Proof of Loss if it was filed as soon as reasonably possible. In no event, however, will we accept a filing of Proof of Loss more than a year after it is due. An exception will be made only if we receive proof satisfactory to us that you were not competent to make claim [sic].

[ECF No. 10-3 at p. 11]. In the General American Policy, "monthly benefits are paid at the end of each month, subject to continuing Proof of Loss." [Id.].

Based on these provisions, Sigal contends that the limitations period governing his bad faith claim is three years, that the limitations period has not yet begun to run, and may never be triggered because he has been continuously disabled from 2004 to the present day. The Court rejects this claim.

"A federal court sitting in diversity applies the substantive law of the relevant state." Romeo v. Unumprovident Corp., No. 07-1211, 2008 WL 375161 at *3 n.4 (E.D. Pa. 2008) (citing Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007)). "That substantive law includes the statute of limitations." Id. Plaintiff argues that his cause of action for statutory bad faith did not accrue upon the initial denial of benefits in 2005, but remained viable through the second denial in 2010, and is viable now. This is not the law. The law, as the Court has explained, is that a bad faith claim accrues at the time of the initial denial of an insured's claim. Only if activity occurring after the initial denial constitutes a "separate act[ ] of bad faith, not a continuation of a previous denial," can the insurer be held liable for the additional acts, *despite the fact that the limitations period has run with respect to the initial denial.* Id. (quoting Rottmund v. Cont'l Assurance Co., 813 F. Supp. 1104, 1105-06 (E.D. Pa. 1992) (emphasis added). In 2010, Sigal asserted different grounds for coverage than he did in 2005, and the reasons given for rejection of his 2010 claim

were also different. This amounted to denial of a different claim, for which the statute of limitations began to run in November 2010. That later denial did not effect a resurrection of the 2005 denial for any purpose, including the running of the statute of limitations.

The Court also rejects Sigal's argument that the three year statute of limitations in the in the insurance policy itself saves his statutory bad faith claims. Sigal does not cite a single case from Pennsylvania or any other jurisdiction that has applied a disability policy's limitations period rather that the limitations period governing a statutory bad faith claim. In Pennsylvania, these bad faith claims have consistently been determined to sound in tort rather than contract. "[T]he greater number of the most recent decisions from Pennsylvania courts have treated a § 8371 claim as separate and distinct from the underlying contract action against the insurer," as they have in the majority of states recognizing a statutory cause of action. Ash, 932 A.2d at 880 (citing Haugh, 322 F.3d at 236). See e.g., Nelson v. State Farm Mut. Auto. Ins., 988 F. Supp. 527, 530-31 (E.D. Pa. 1997) (holding that bad faith statutory action in Pennsylvania is separate and distinct from a claim on the insurance contract; collecting cases). See also, Romeo, 2008 WL 375161 at *3 (failing, on facts similar to those presented here, to discuss contractual statute of limitations, holding instead that limitations period on statutory bad faith claim begins to run "when insured first knows the benefits have been [denied or] terminated."). The limitations language made part of the relevant policies refers to the time period for filing suit to recover benefits *under the policies*. In his bad faith claim, Sigal is not suing on the policies; he is proceeding in tort, rendering the policy language inapplicable.[9]

---

[9] Further support for this reading of the law comes from the fact that in 1990, the Pennsylvania General Assembly enacted 42 Pa. Cons. Stat. Ann. § 8373, and both federal and intermediate state courts predicted correctly that the Pennsylvania Supreme Court would set the statute of limitations under that legislation at two years. These events occurred despite the fact that Pennsylvania law had, in 1980, mandated that the contractual clauses at issue be included in every insurance contract "delivered or issued for delivery to any person in [Pennsylvania] . . . ." 40 P.S.

Here, Defendants are not moving to dismiss the statutory bad faith claim on the basis of the "Proof of Loss" and "Legal Actions" provisions of the policy. Thus, the limitations period included in the policy is inapplicable. Although the United States Court of Appeals for the Third Circuit found the policy limitations period controlling in Hofkin v. Provident Life & Accident Ins. Co., 81 F.3d 365 (3d Cir. 1996), there, the plaintiff had been paid for a continuing disability spanning eight years, and filed suit when benefits were stopped; this is not what happened here. In this case, there were clear and separate denials of two widely separated and different benefit claims.[10] Thus, the Court finds that Sigal's statutory bad faith claim based on the 2010 denials, like claim based on the 2005 denials, the same statue, is time-barred.

## Conclusion

For the reasons set out above, Defendant's Motion to Dismiss the Amended Complaint [ECF No. 12] will be granted in its entirety with respect to claims based on the 2005 denial of benefits. The Motion will also be granted as to Counts III, V, VI, and VII insofar as they pertain to the 2010 denial. Thus, three causes of action survive Defendants' Motion. These are the breach of contract claims against Paul Revere and General American, respectively, based on the 2010

§ 753(A)(11) (Purdon's 1980). If these contractual clauses were meant to control the statute of limitations period for statutory bad faith actions, there would have been no need for state courts and federal courts interpreting state law to have considered the limitations question, nor would the Pennsylvania Supreme Court have fixed the governing period at two years. This Court also rejects Defendant Sigal's argument that he is not bound by the limitations period applicable to Section 8373 since that statute was enacted after the Paul Revere policies were issued. The decision in Rottmund makes clear that it is not the date of issue that controls, but the date on which the challenged denial occurred. 813 F. Supp. 1104 at 1105-06. All of the insurers' 2005 and 2010 denials in this case post-dated the enactment of Section 8373, and are subject to the two year statute of limitations.

[8] For a thorough discussion of the differences between Hofkin and cases of the type brought by Sigal, see Leporace v. New York Life & Annuity, Civil Action No. 11-2000, 2011 WL 6739446 (E.D. Pa. Dec. 21, 2011) (holding, on facts very similar to those here, that the clear four- and two-year statute of limitations periods "must apply" to Plaintiff's breach of contract and bad faith claims as determined in Romeo, 2008 WL 375161 "and other insurance contract cases post-dating Hofkin."). Id. at *11.

denial of benefits allegedly due under relevant disability insurance policies. Also remaining is Sigal's claim that he is entitled to damages as a third party beneficiary under RSAs breached by UNUM and Paul Revere.

August 22, 2013

By the Court,

Cynthia Reed Eddy
United States Magistrate Judge

cc: Counsel of Record via CM-ECF