IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL B. SIGAL, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 13-169 |
| | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy[1] |
| THE GENERAL AMERICAN LIFE INSURANCE COMPANY, THE PAUL REVERE LIFE INSURANCE COMPANY, and UNUM GROUP, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

## I. Introduction

On January 2, 2013, Plaintiff, Michael B. Sigal filed the instant action in the Court of Common Pleas of Allegheny County, Pennsylvania. On February 1, 2013, this case was removed on diversity grounds. *See* Compl. [ECF No. 1]. Plaintiff filed an Amended Complaint on February 28, 2013 alleging wrongful denial of claims made under disability insurance policies issued by Paul Revere Insurance Company ("Paul Revere"), Paul Revere's wholly owned subsidiary, Unum Group ("Unum"), and General American Life Insurance Company ("General American") (collectively "Defendants" or "the insurers") and set forth various claims against Defendants including breach of contract, breach of the duty of good faith and fair dealing, breach of third-party beneficiary contract, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("UTPCPL"), 73 P.S. § 201, *et seq.*, bad faith denial of insurance claims under 42 Pa.C.S.A. § 8371, and civil conspiracy to violate the UTPCPL originating from

---

[1] By consent of the parties, [ECF Nos. 17, 18], pursuant to 28 U.S.C. § 636(c), the undersigned has full "authority over dispositive motions . . . and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.*, 487 F.Supp.2d 530, 535 (M.D.Pa. 2007).

1

insurance policies issued to Plaintiff by Defendants. Am. Compl. [ECF No. 10]. The only claims remaining in this case are the breach of contract claims for the Defendants denial of benefits in 2010. *See* Memo. Order [ECF No. 22] at 21-22 ("[T]hree causes of action survive Defendants' Motion. These are the breach of contract claims against Paul Revere and General American, respectively, based on the 2010 denial of benefits allegedly due under relevant disability insurance policies. Also remaining is Sigal's claim that he is entitled to damages as a third party beneficiary under RSAs breached by U[num] and Paul Revere.").

Following a period of time for the parties to conduct discovery, Defendants collectively filed the present Motion for Partial Summary Judgment. Defs.' Mot. for Partial Summ. J. [ECF No. 44]. The matter has been fully briefed and is ripe for disposition. *See* Defs.' Br. in Supp. of Mot. for Partial Summ. J. [ECF No. 45]; Pl.'s Resp. to Defs.' Mot. for Partial Summ. J. [ECF No. 48]; Defs.' Reply Br. [ECF No. 50]. For the following reasons, Defendants' Motion for Partial Summary Judgment is granted.

## II. Statement of the Facts[2]

### A. The Insurance Policies

Plaintiff, a medical ophthalmologist purchased two disability insurance policies from Paul Revere in 1989. In 1990, Plaintiff secured a third policy from General American. At the time he purchased the policies, Plaintiff practiced as a "surgical" ophthalmologist. Compl. [ECF No. 10] at ¶ 14-17. Each policy contained the following pertinent language as set forth below.

---

[2] Unless specifically noted, the facts are uncontested by the parties. Additionally, the parties submitted a joint concise statement of material facts. *See* Stipulated Statement of Material Facts ("SMF") [ECF No. 46] at 1-14.

*1. The Paul Revere Policies*

The Paul Revere Policies include a "Total Disability in Your Occupation Benefit Rider" which defines "Total Disability" as follows:

> "**Total Disability**" means that because of Injury or Sickness:
>
> 1. You are unable to perform the important duties of Your regular occupation; and
>
> 2. You are under the regular and personal care of a Physician.

App. [ECF No. 46] at 2, 34, 60. The "Total Disability in Your Occupation Benefit Rider" also provides that: "All definitions in Your Policy apply to this rider. All provisions of Your Policy remain the same except where We change them by this rider." *Id*. at 2, 34, 30. The policy further defines "Your Occupation" as follows:

> "**Your Occupation**" means the occupation in which You are regularly engaged at the time You become Disabled.

*Id*. at 3, 22, 48. The policy further defines "Disabled" as follows:

> "**Disability" or "Disabled"** refers to a continuing period of Total and/or Residual Disability. Successive periods will be deemed to be continuing if:
>
> a. Due to the same or related causes; and
>
> b. Separated by no more than 6 months;
>
> Otherwise such periods will be deemed to be new and separate Disabilities.

*Id*. at 3, 23, 49. The Paul Revere policy also included benefits for Residual Disability which is defined as follows:

> "Residual Disability", prior to the Commencement Date, means that due to Injury or Sickness:

3

> a. (1) You are unable to perform one or more of the Important duties of Your Occupation; or
>
> (2) You are unable to perform the important duties of Your Occupation for more than 80% of the time normally required to perform them; and
>
> b. Your Loss of Earnings is equal to at least 20% of Your Prior Earnings while You are engaged in Your Occupation or another occupation; and
>
> c. You are under the regular and personal care of a Physician.
>
> As of the Commencement Date, Residual Disability means that due to the continuation of that Injury or Sickness:
>
> a. Your Loss of Earnings is equal to at least 20% of Your Prior Earnings while You are engaged in Your Occupation or another occupation; and
>
> b. You are under the regular and personal care of a Physician.
>
> Residual Disability must follow right after a period of Total Disability that lasts at least as long as the Qualification Period, if any.

*Id*. at 2-3, 23, 49.

In his application for the Paul Revere policies, Plaintiff listed his occupation as "Surgical Ophthalmologist" and listed his exact duties as "medical & surgical care of eye diseases." *Id*. at 4, 38, 62. After the Paul Revere policies were issued, Paul Revere sent Plaintiff a letter regarding each policy to clarify the term "regular occupation." *Id.* at 4, 68, 69. The letters stated in pertinent part:

> By your "regular occupation," we mean that occupation in which you are regularly engaged at the time disability begins. We understand your current occupation to be that of an ophthalmic surgeon.

> If you were performing the important duties of an ophthalmic surgeon immediately prior to the time disability begins, and then were unable to perform those duties, you would be considered unable to perform the important duties of your regular occupation.
>
> . . .
>
> The actual payment of benefits, of course, would be determined in accordance with the provisions of your policy.

*Id*. at 4, 68, 69.

### 2. *The General American Policy*

Plaintiff's General American Policy contains an "Own Occupation Rider" that defines "Total Disability" as:

> **Total Disability and Totally Disabled** mean that, as a result of Sickness or Injury or a combination of both, you are unable to perform the material and substantial duties of your Regular Occupation. You must be under the regular care of a Physician, other than yourself, unless you furnish proof satisfactory to us that future or continued care would be of no benefit.

*Id*. at 5, 88. The General American and Paul Revere policies are substantially similar in the way they define "Occupation." The General American policy defines "Regular Occupation" as "your usual occupation when Total Disability begins." *Id*. at 5, 88. The policy also included a term of "Period of Total Disability" and defined it as:

> **Period of Total Disability** means the number of days you are continuously Totally Disabled at any one time. A Period of Total Disability includes a later Period(s) of Total Disability and will be considered continuous and part of the same claim, if the later period(s):
>
> 1. is due, in whole or in part, to the same or related cause or causes as the previous period, and
>
> 2. starts less than six months after the end of the prior Period of Disability.

> In all other cases, the later Period of Total Disability will be a new disability and a new claim. It will require a new Waiting Period and a new Benefit Period.

*Id*. at 5, 74.

The General American Policy also contains a "Proportionate Income Replacement Rider for Residual Disability" that defines "Residual Disability" as follows:

> **Residual Disability and Residually Disabled** mean that while you are Disabled from Sickness or Injury, or a combination of both, either in your Regular Occupation or another occupation:
>
> 1. you are working, but, solely as a result of such Disability, you are unable to earn at a rate of at least 80% of your Prior Earned Income; or
>
> 2. during the Waiting Period and during the first 6 months benefits are payable, you are working, but solely as a result of such Disability:
>
>> a) you are unable to perform one or more of the substantial and material duties which accounted for at least 20% of the time you spent in your Regular Occupation prior to your Disability; or
>>
>> b) you are able to perform all of the substantial and material duties of your Regular Occupation, but for 80%, or less, of the time you formerly spent prior to your Disability; and
>
> 3. you are under the regular care of a Physician, other than yourself, unless you furnish proof satisfactory, to us that future or continued care would be of no benefit to you.

*Id*. at 5-6, 74.

In his application for the General American policy, Plaintiff listed his occupation as "Surgeon" and "Ophthalmology Surgeon" and indicated his duties as "Surgeon (Eye)." *Id*. at 94-95. After issuing the policy, General American sent Plaintiff a letter explaining the Policy as it related to the term "Your Occupation." *Id*. at 6. The letter stated in pertinent part:

6

> You are covered under this policy in your specialty of Ophthalmology. Should injuries or sickness result in a disability which causes you to be unable to perform the material and substantial duties of that occupation, we would consider you totally disabled under the terms of the policy.
>
> Please remember, however, that if you change your occupation, the facts of the case prevail in determining the regular occupation, in which you are engaged at the time disability commences.

*Id.* at 6, 105.

### B. Plaintiff's 2004 Disability Claim

In 2001, Plaintiff's cardiologist, Dr. Edmundowicz, diagnosed Plaintiff with asymptomatic coronary artery disease. SMF [ECF No. 46] at ¶ 19. Dr. Edmundowicz advised Plaintiff to take regular medication, eat a proper diet, exercise, get adequate sleep, and to avoid stress. *Id.* at ¶ 22. Plaintiff identified that performing intraocular surgery in connection with his occupation as a surgical ophthalmologist as his most significant source of stress and was advised by Dr. Edmundowicz that removing this stressor would slow the progression of his medical condition. *Id.* at ¶ 24. Following Dr. Edmundowicz's recommendations, Plaintiff eliminated intraocular eye surgery from his practice as of July 1, 2004. *Id.* at ¶ 25. Plaintiff continued to work, and performed other types of ophthalmologic services. *Id.* at ¶ 38

Three months later, Plaintiff filed claims under each of the three disability insurance policies, stating that ceasing intraocular eye surgery in order to reduce the risk of progression of his coronary artery disease rendered him disabled under the policy and caused a significant decrease to his income (the "2004 Claim"). *Id.* at ¶¶ 27-28. On June 25, 2005, Donna Terrasi, a Paul Revere Disability Benefits Specialist, wrote to Plaintiff and advised him that Paul Revere had concluded that the medical evidence did not support his alleged inability to perform surgery, and concluded that "since there does not appear to be a cardiac condition causing you to

7

discontinue all occupational duties of an Ophthalmologist, we find that you do not satisfy the definition of Total Disability as stated in your policies and no further benefits would be due." *Id.* at ¶ 27. Paul Revere therefore denied Plaintiff disability benefits under the policy. General American likewise sent Plaintiff notice that his claim under that policy was denied for these same reasons. Plaintiff was informed in both letters his right to contest the findings and conclusion by submitting a written appeal within 180 days of the denial of benefits. Plaintiff did not file a timely appeal to the denial of benefits, and this Court dismissed any claims arising from the 2004 Claim as barred by the applicable statute of limitations. Memo. Op. and Order [ECF No. 22] at 21-22.

        C.      <u>Plaintiff's 2010 Disability Claim</u>

As a result of the progression of his coronary heart disease, Plaintiff was hospitalized on April 5, 2010 and underwent coronary bypass surgery on April 7, 2010. SMF [ECF No. 46] at ¶ 29. In May 2010, Plaintiff resumed performing certain ophthalmologic services. *Id.* at ¶ 30.

In June 2010, Plaintiff submitted disability claims under all of the policies (the "2010 Claim"). *Id.* at ¶ 31. By a letter dated November 18, 2010, Paul Revere informed Plaintiff that his claim for benefits was denied because "the information contained in [Plaintiff's] claim file [did] not support [his] inability to perform the important duties of [his] occupation as an ophthalmologist for the period of July 1, 2004 to April 4, 2010." App. [ECF No. 46] at 112. Paul Revere reasoned that because Plaintiff's occupational duties did not change before and after his bypass surgery, he was not "Totally Disabled" as that term was defined in the policy. The letter also provided that it was "reasonable that [Plaintiff be] restricted from high stress procedures such as may be involved with ophthalmologic surgery[,]" and "the risk of an adverse coronary event due to disease progression could be considered indeterminate and would justify not

8

allowing you to put yourself or a patient at risk by undertaking responsibility for a surgical procedure." *Id*. at 114, 120.

While Paul Revere concluded that Plaintiff was disabled from performing intraocular surgery after April 5, 2010, it specifically concluded that he was not disabled from his occupation based upon his occupational duties before and after April 5, 2010. SMF [ECF No. 46] at ¶ 33. Paul Revere stated in its letter:

> [W]e have completed our review of your CPT codes[3] and your production for post disability months of 5/2010 – 7/2010 is similar to 2009 and the months of February 2010 and March 2010 (We were not able to comment on January and August 2010 as the reports were incomplete.) **Based on this information you are performing the duties of your occupation as you did prior to April 5, 2010 and therefore would not meet the definition of disability in your policies**.
>
> Based on our review, we find the information in your claim file indicates you are able to perform the material and substantial duties of your occupation as performed prior to your disability of April 5, 2010. . . . Therefore, you do not meet the definition of Residual Disability or Total Disability under your policies. Therefore, your claim has been closed effective November 18, 2010.

*Id*. at ¶ 33 (emphasis and footnote added).

### D. Plaintiff's Occupational Duties

Generally, Plaintiff's practice before 2004 involved both surgical and non-surgical duties. Plaintiff's occupational duties involved medical, non-surgical ophthalmologic services, intraocular surgeries, including cataract and glaucoma surgeries, and non-intraocular corrective laser surgery. Defs.' Br. in Supp. of Partial Summ. J. [ECF No. 45] at 9. As aforementioned, Plaintiff ceased performing any intraocular surgeries as of July 1, 2004 to reduce stress in an

---

[3] CPT (Current Procedural Terminology) Codes are medical codes maintained by the American Medical Association and are widely used for billing for physician services. *See* Defs.' Br. in Supp. of Partial Summ. J. [ECF No. 45] at 8 n. 2.

effort to slow the progression of his coronary heart disease. *Id*. After July 1, 2004, Plaintiff continued to perform medical ophthalmologic services and non-intraocular laser surgeries. App. [ECF No. 46] at 11, 193-194.

In a Physician Questionnaire dated May 6, 2010, Plaintiff stated that he spent 95% of his time in his office seeing patients and worked approximately thirty hours per week in the office during the year leading up to his April 2010 surgery. SMF [ECF No. 46] at ¶ 39. Plaintiff described his occupational duties between April 2005 and April 2010 as follows: "Plaintiff's occupational duties consisted of examining patients, performing in-office procedures and lasers and referring all patients requiring hospital surgery to other physicians[,]" and further testified that he is presently able to perform the same occupational duties. *Id*. at ¶ 40-41. Additionally, Plaintiff performed "a variety of other, non-surgical ophthalmologic procedures after July 1, 2004 including, but not limited to, ultrasound, general ophthalmological services, special ophthalmological services, evaluation and management services and contact lens services.[4] *Id*. at ¶ 45.

As previously mentioned, the only remaining claims against Defendant in this case are the breach of contract claims based upon the 2010 denial of benefits, and Plaintiff's claim that he is entitled to damages as a third party beneficiary of regulatory settlement agreements made by Defendants with a number of states and the United States Department of Labor. Defendants move for partial summary judgment on these remaining claims arguing that the Court should "dismiss any claim by [Plaintiff] to have his 'Occupation' defined for the 2010 claim based on his occupational duties before July 1, 2004." Defs.' Mot. for Partial Summ. J. [ECF No. 44] at ¶

---

[4] Between July 2004 to the end of 2009, Plaintiff performed over 580 "after cataract laser surgeries" (CPT Code 66821), over 400 "laser surgery of eye" procedures (CPT Code 65855), over 400 "treatment of retinal lesion" procedures (CPT Codes 67210 and 67228, and over 300 "revision of iris" procedures (CPT Code 66761). App. [ECF No. 46] at 11.

8. In other words, Defendants argue that because Plaintiff's occupational duties did not change from April 2010 when he required cardiac surgery to May 2010 when he resumed his practice, his occupation as defined under the policies did not change such that it would entitle him to disability benefits.

### III. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317,

11

(1986); *UPMC Health Sys. v. Metro. Life Ins. Co.,* 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the nonmovant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989) (the nonmovant must present affirmative evidence-more than a scintilla but less than a preponderance-which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument," *Berckeley Inv. Grp. Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e*., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp*., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party."

*Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

**IV. Discussion**

  A.  <u>Breach of Contract</u>

Plaintiff claims that Defendants breached the policies by failing to find that he was under either a Total or Residual Disability since July 1, 2004 and paying him benefits for that period. *See* Am. Comp. [ECF No. 10] at ¶¶ 72, 73, 89, 90. Plaintiff argues that he is entitled to recover benefits under these disability policies and seeks damages as a direct and proximate result of Defendants' failure to pay the benefits. *Id.* at ¶¶ 74, 91.

While Defendants do not directly seek dismissal of the breach of contract claim relating to the 2010 denial of benefits, they argue that Plaintiff should be prevented from asserting that he was "disabled as of the date of an earlier disability claim (in 2004) for purposes of a later claim (in 2010) when . . . the Defendants denied the earlier claim finding that [Plaintiff] was not disabled and . . . the earlier claim is barred by the statute of limitations." Defs.' Joint Mot. for Partial Summ. J. [ECF No. 45] at 1.

For the reasons that follow, the Court agrees with Defendant and finds that Plaintiff cannot, for purposes of his remaining breach of contract claim for the 2010 denial of benefits, argue that he was disabled in 2004 to support a finding that he was disabled in 2010, where he never challenged the Defendant's original finding that he was not disabled and that claim is barred by the applicable statute of limitations.

*1. Interpretation of Insurance Policies Under Pennsylvania Law[5]*

As a preliminary matter, the parties do not dispute that Pennsylvania law applies in this diversity matter. *See Crawford v. Manhattan Life Ins. Co. of N.Y.*, 221 A.2d 877, 154-55 (Pa.Super. 1966). The fundamental tenets "governing insurance policy interpretation are well-settled in Pennsylvania. The goal of interpreting an insurance policy, like the goal of interpreting any other contract, is to determine the intent of the parties. It begins where it must – the language of the policy." *Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 171 (3d Cir. 2006) (citations omitted). The interpretation of an insurance policy, like a contract, is a matter of law for the court to determine. *Lexington Ins. v. W. Penn. Hosp.*, 423 F.3d 318, 323 (3d Cir. 2005). "Where the language of the insurance contract is clear and unambiguous, a court is required to give effect to that language; where, however, a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Klay v. AXA Equitable Life Ins. Co.*, 2010 WL 3885117, at *11 (W.D.Pa. Sept. 28, 2010) (citing *Lexington Ins.*, 423 F.3d at 323) (additional citations omitted).

The language of an insurance policy is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Regents of Mercersburg Coll.*, 458 F.3d at 172 (citations omitted). In Pennsylvania, "[c]lear policy language . . . is to be given effect, and courts should not torture the language to create ambiguities but should read the policy provisions to avoid it." *USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 198 (3d Cir. 2006) (quoting *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3

---

[5] While Defendants also argue that allowing Plaintiff to relitigate whether Defendants should have found him "Disabled" in 2004 would undermine the purpose of a statute of limitations, because the Court finds in Defendants' favor under the principles of contract interpretation, this argument will not be discussed.

(3d Cir. 1998)). Additionally, "[a]n insurance policy which is clear and unambiguous must stand as written, the same as any other contract, without alteration by adding new terms or dropping existing terms, save with the consent of the contracting parties or their duly authorized agents acting within the scope of their authority. *Klay*, 2010 WL 3885117, at *12 (quoting Lee R. Russ, 2 Couch on Ins. § 21.19 (3d ed. 2010)).

Like the policy itself, "[a]nswers contained in an [insurance] application must be construed in the plain and unambiguous words used, and in the light of all the attendant circumstances and according to their natural meaning. Naturally, the meaning of the answer is to be determined in the light of the questions." Couch on Ins. § 21:24 (3d ed. 2010). A court must consider the insurance policy in total, giving each term its plain meaning and giving effect to all of the provisions, and must not view any one provision or word in isolation. *See Delaware Cnty. Const. Co. v. Safeguard Ins. Co.*, 502 A.2d 15, 17 (Pa.Super. 1967) (citing *Newman v. Massachusetts Bonding & Ins. Co.*, 65 A.2d 417 (Pa. 1949)).

In the instant case, Defendants generally argue that the insurance contract is unambiguous and the Court should interpret it plainly – which prevents Plaintiff from asserting that the onset of his medical condition in 2004 constituted a disability for his 2010 insurance claim. Defendants argue that the terms of the insurance policies are unambiguous because Plaintiff was performing the same occupational duties before and after his surgery in 2010, such that he was not rendered disabled under the policy terms. Additionally, Defendants contend that in addition to the fact that the 2004 claim is time-barred, the 2004 Disability preceded the 2010 Claim by more than six months and was therefore a new Disability and under the terms of the policy. As such, according to Defendants, Plaintiff's Occupation would be defined by his occupational duties in 2010 and not 2004.

15

Plaintiff responds that the insurance policy terms are ambiguous and thus under principles of contract law, those ambiguities should be construed in his favor. Plaintiff offers two reasons in support of his argument. First, on his insurance policy applications, he indicated that he was a surgical ophthalmologist and because the applications were integrated into the insurance policies, he must be considered a surgical ophthalmologist at all times pursuant to the policies. The applications therefore conflict with the policy provisions which state that the insured's occupation will be determined at the time of the disability, and under contract principles, any discrepancy must be resolved in favor of Plaintiff. Second, Plaintiff argues that the terms of the policies are "hopelessly circular" and are thus ambiguous. Specifically, Plaintiff argues that

> in order to determine if an insured is totally disabled, one must know what his "regular occupation" is. Under the . . . policies "'Your Occupation' means the occupation in which You [the insured] are regularly engaged at the time You become disabled." Thus, to know if an insured is disabled, one must know what his regular occupation is and, to know what his regular occupation is, one must know when he became disabled. It is these classically circular definitions that form the entire basis of Defendants' Motion. They also render the Policies undeniably ambiguous.

Pl.'s Br. in Op. to Defs.' Mot. for Summ. J. [ECF No. 48] at 12 (emphasis omitted).

First, Plaintiff's argument that his insurance applications in which he indicated his occupation as "surgical ophthalmologist" conflicts with and therefore supersedes the policies' terms is an illogical reading of the documents. Plaintiff unilaterally completed the applications, and while the applications were integrated into the policies, the occupation set forth by Plaintiff in the applications do not serve as a conclusive definition or explanation of benefits, nor do they conflict with the policy provisions to render the provisions ambiguous. The policies contemplate

that a person's occupational duties and/or occupation may change after the insurance policy is issued. Therefore, the insured's occupation is considered what his duties are at the onset of the insured's alleged disability. That Plaintiff indicated in insurance applications what his occupation was at that time he applied for insurance coverage is of no consequence, belabors a finding that the policies are ambiguous, and asks the Court to find an ambiguity where one does not exist.

Further, while Plaintiff claims he is not a "medical" ophthalmologist, Plaintiff never renounced his employment as a surgical ophthalmologist, and in fact performed some surgical procedures, such as laser eye surgery, after the onset of his medical condition 2004. The only difference in his occupational duties was that he stopped performing a specific type of surgery – intraocular eye surgery – that was most stressful to him because of his medical condition. However, the fact remains that Plaintiff did not challenge the denial of benefits in 2004 until after the statute of limitations ran. Therefore the Court cannot determine that he was disabled in 2004 for purposes of his 2010 denial because Plaintiff failed to timely challenge that finding. Additionally, more than six months passed between his first and second disability claim which made it proper for Defendants to reevaluate Plaintiff's occupation at the time of his second claim and consider it a new disability under the terms of the policy. Under the policy it only matters what occupational duties Plaintiff was performing before and after the onset of his disability as to whether he was entitled to disability benefits. The Court must emphasize that this finding does not go as far as concluding that Plaintiff's occupational duties did not change before and after his bypass surgery in 2010, as Defendants do not move for summary judgment on that issue. Rather, the Court concludes that it was proper for Defendant under the unambiguous terms of the insurance policy to compare, evaluate and base their denial of benefits on the

occupational duties before and after Plaintiff's bypass surgery in 2010 without taking his 2004 claim into account. Accordingly, Defendants' Motion for Partial Summary Judgment is granted and any claim by Plaintiff to define his Occupation for purposes of his 2010 Claim for disability insurance benefits based on his occupational duties before his 2004 Claim is dismissed with prejudice.

**V.     Conclusion**

For the aforementioned reasons, Defendants', The General American Life Insurance Company, The Paul Revere Life Insurance Company and Unum Group's Motion for Partial Summary Judgment [ECF No. 44] is granted. An appropriate Order follows.


Dated: October 6, 2014

                                            BY THE COURT:

                                            s/ Cynthia Reed Eddy
                                            Cynthia Reed Eddy
                                            United States Magistrate Judge


cc: all counsel of record *via CM-ECF electronic filing*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL B. SIGAL,<br><br>        Plaintiff,<br><br>        v.<br><br>THE GENERAL AMERICAN LIFE<br>INSURANCE COMPANY, THE PAUL<br>REVERE LIFE INSURANCE COMPANY,<br>and UNUM GROUP,<br><br>        Defendants. | Civil Action No. 13-169<br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## ORDER

AND NOW, this 6th day of October, 2014, in conjunction with the foregoing Memorandum Opinion, it is HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment [ECF No. 44] is GRANTED, and any claim by Plaintiff to define his Occupation for purposes of his 2010 Claim for disability insurance benefits based on his occupational duties before his 2004 Claim is dismissed with prejudice.

IT IS FURTHER ORDERED that the Court will conduct a Status Conference on <u>October 17, 2014 at 1:30 PM</u> in Room 10160 of the United States Courthouse, 700 Grant St., Pittsburgh, PA, 15219.

                                                    BY THE COURT:

                                                    <u>s/ Cynthia Reed Eddy</u>
                                                    Cynthia Reed Eddy
                                                    United States Magistrate Judge

cc:    all counsel of record *via CM-ECF electronic filing*